# In the United States Court of Federal Claims

HOLTEC PALISADES, LLC,

*Plaintiff,*

v.

THE UNITED STATES,

*Defendant.*

No. 22-713 C
(Filed: October 28, 2024)

Samuel O. Morris, IV, Entergy Services, LLC, Jackson, MS, for plaintiff.

Augustus Golden, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting Holtec's Motion for Partial Summary Judgment and**
**Denying the Government's Cross-Motion for Partial Summary Judgment**

**SILFEN,** *Judge.*

Holtec Palisades, LLC, sued the U.S. government to recover $7,266,321 for security and fuel storage costs at two spent nuclear fuel storage facilities.[1] Holtec alleges that it incurred those costs because the government breached its contractual obligation to store the fuel. Holtec now moves for summary judgment on $6,888,637 of the claimed damages. The government cross-moves for summary judgment on the recoverability of damages for one of the facilities and, for the other facility, on the sum that Holtec excluded from its summary-judgment motion. Holtec is entitled to recover damages for both facilities because it has incurred expenses related to both

---

[1] This opinion was originally issued under seal. The parties had no proposed redactions. The court reissues the opinion publicly.

facilities. Holtec's expenses are well documented and foreseeable, and the government raises no genuine dispute of material fact. The government is not entitled to summary judgment on the sum that Holtec excluded from its motion. This court therefore **grants** Holtec's motion for partial summary judgment and **denies** the government's cross-motion for partial summary judgment.

## I.     Background

Holtec owns the Palisades Nuclear Plant and the Big Rock Point Independent Spent Fuel Storage Installation (ISFSI) in Michigan. ECF No. 1 at 1-2 [¶¶1, 3]; ECF No. 13. In 1982, Congress established a program for the disposal of spent nuclear fuel and highly radioactive waste. Nuclear Waste Policy Act of 1982, 42 U.S.C. § 10101 et seq. The program required the Department of Energy to start disposing of both by 1998. 42 U.S.C. § 10222(a)(5)(B); *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1374 (Fed. Cir. 2005). In 1983, Consumers Energy Company and the Department of Energy entered into a contract (the "Standard Contract") to dispose of the fuel and waste from the Palisades and Big Rock facilities. ECF No. 1 at 1-2 [¶2]; ECF No. 40 at 5 [¶2].[2] The contract explained that the Department of Energy was responsible for starting to dispose of the materials by January 31, 1998. But the Department of Energy has not yet accepted spent nuclear fuel from Palisades or Big Rock. ECF No. 12 at 6 [¶23]. Thus, the owners of Palisades and Big Rock have had to pay for that storage for the past two and a half decades despite the government's promises.

The general background of the government's contracts and circumstances related to spent nuclear fuel has been outlined in prior rounds of this litigation, as well as in similar spent-nuclear-

---

[2] ECF No. 40, which is Holtec's brief in support of its motion for partial summary judgment, is publicly available in redacted form at ECF No. 48. The same is true for exhibits attached to that brief.

fuel cases in this court and the Federal Circuit. *See Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 365-66 (2005) (first round of this litigation); *Entergy Nuclear Palisades, LLC v. United States*, 128 Fed. Cl. 120, 121 (2016) (second round of this litigation); *see also, e.g.*, *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 640-41 (2004); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337 (Fed. Cir. 2000). I will only repeat it here as necessary.

Consumers first sued the government for damages arising out of the government's breach of the Standard Contract in 2002. *Consumers*, 65 Fed. Cl. 364. The parties settled in 2011, with the settlement covering damages up to April 2007. ECF No. 1 at 4-5 [¶9], 9-10 [¶25]. In April 2007, Entergy Nuclear Palisades, LLC acquired Palisades and Big Rock from Consumers. ECF No. 50-1 at Appx28-31.[3] As part of the sale, Consumers assigned Entergy all of its rights, titles, and interests under the Standard Contract. *Id.* at Appx85 (section 6.14(a)). In 2013, Entergy brought a second lawsuit to recover damages incurred between April 2007 and June 2013. This court awarded Entergy $20,634,196 in undisputed damages in a partial-summary-judgment decision and another $13,828,676 in damages following a seven-day trial. *Entergy*, 128 Fed. Cl. 120. In 2019, Entergy brought a third lawsuit to recover damages incurred between July 2013 and December 2019. *Entergy Nuclear Palisades, LLC v. United States*, No 19-484, ECF No. 1 (Fed. Cl. Apr. 1, 2019). The government extended an offer of judgment, which Entergy accepted, so this court entered a judgment awarding Entergy $23,132,488. *Entergy*, No. 19-484, ECF No. 36 (Fed. Cl. Jan. 22, 2021).

---

[3] ECF No. 50, which the government's combined cross-motion for partial summary judgment and response to Holtec's motion, is publicly available in redacted form at ECF No. 53. The same is true for exhibits attached to that brief.

This is the fourth round of litigation in this court addressing the government's breach of the Standard Contract at Palisades and Big Rock. Holtec acquired the Palisades and Big Rock facilities from Entergy in June 2022. Holtec seeks a total of $7,266,321 for security costs and fuel storage at Palisades and Big Rock covering January 2020 to June 2022. ECF No. 40 at 7 [¶8].[4] Of the total, the government, through its expert, specifically disputed $377,684 after discovery: $354,269 related to security at Palisades and $23,415 related to a study that Holtec conducted to determine the feasibility of moving spent nuclear fuel at Big Rock. ECF No. 40-1 at A18.

Holtec seeks summary judgment on the entire amount minus the disputed sums, or a total of $6,888,637. ECF No. 40 at 2. The government responds that Holtec is not entitled to any damages for Big Rock because Holtec gained a $90 million benefit when it purchased Big Rock, and that benefit has not yet been offset by an equivalent $90 million in damages. ECF No. 50 at 17-18. The government also argues that Holtec's feasibility study costs are not recoverable because they were not foreseeable, arguing that the court should grant summary judgment in the government's favor on those costs. *Id.* at 23-26. And the government asserts more generally that Holtec is relying on inadmissible evidence and expert opinions to satisfy its burden of proof. *Id.* at 30-44.

## II.    Discussion

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Court of Federal Claims (RCFC), Rule 56(a). Disputes over material facts preclude summary

---

[4] The government does not dispute that Holtec is the real party in interest in this case because it is currently the named holder of the Standard Contract. *See generally* RCFC 17(a)(1); *Haddon Housing Associates v. United States*, 92 Fed. Cl. 8, 15-17 (2010). But during the time period at issue, Entergy was the holder, and any damages in this case will ultimately go to Entergy. ECF No. 67 at 7:20-8:15 (Holtec's counsel's explanation).

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could "affect the outcome of the suit under the governing law." *Id.* A dispute is genuine when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* "The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact." *8 x 8, Inc. v. United States*, 854 F.3d 1376, 1380 (Fed. Cir. 2017).

When deciding a motion for summary judgment, a court must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment should be granted when the record "could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986) (quotation marks omitted). "When both parties move for summary judgment, grant of the motion in favor of one party must satisfy this rule concerning factual inferences; cross-motions do not change the requirement that all justifiable inferences must be drawn in favor of the losing party." *Murphy Exploration & Production Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 (Fed. Cir. 1996). On cross-motions for summary judgment, "each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott International Resorts, L.P. v. United States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009).

A.     **The Palisades security costs are well documented and reasonably foreseeable, and the government raises no genuine issue of material fact about the total Holtec seeks in its motion**

The Palisades facility has two ISFSIs on site. Holtec seeks damages for only one of them, Palisades ISFSI 2. Holtec seeks a total of $2,464,297 on summary judgment—after taking out the disputed sum—for security and dry fuel storage activities for that ISFSI. ECF No. 58 at 14.[5]

To recover damages arising out of the government's breach of the Standard Contract, Holtec must show damages "with reasonable certainty." *Indiana Michigan Power*, 422 F.3d at 1373. Reasonable certainty does not require "absolute exactness or mathematical precision" but must be more than "speculative." *Id*. (quotation marks omitted).

To meet that burden, plaintiffs in spent nuclear fuel cases generally must produce voluminous and detailed records. *See e.g. Arizona Public Service Co. v. United States*, 93 Fed. Cl. 384, 395 (2010) ("Plaintiff made an extensive disclosure of charges to defendant as support for its claims as a part of a damages audit." (quotation marks omitted)); *Georgia Power Co. v. United States*, 2015 WL 832425, *3 (Fed. Cl. 2015) (stating that spent-nuclear-fuel cases are "complex and detail-oriented"). Here, Holtec supported its alleged damages with tens of thousands of pages of contracts, invoices, records, and other supporting documents. ECF No. 40-1 at A1 (production list in native Excel format mailed to court). The government audited those materials. *See* ECF No. 40-1 at A157 (the government's expert, Mark Gmyr, stating in his deposition that he "did a thorough examination of all financial records relevant to this matter"); *id*. at A11 (Mr. Gmyr stating in his expert report that he "undertook a detailed investigation of plaintiff's development of its actual

---

[5] ECF No. 58, which is Holtec's response to the government's cross-motion for partial summary judgment and reply in support of its motion for partial summary judgment, is publicly available in redacted form at ECF No. 61. The same is true for exhibits attached to that brief.

cost claim"). To facilitate the government's audit, Holtec produced, among other things, a cost report summarizing the claimed damages. ECF No. 40-1 at A31-32 (cost spreadsheets in native Excel format mailed to court). The government also deposed some of Holtec's employees, including Palisades finance manager Peter Sabo, who answered questions about the preparation, monitoring, tracking, and reporting of costs for spent-nuclear-fuel management and discussed supervising the preparation of the cost report. ECF No. 40-1 at A142-43, A147-51 (Sabo deposition).

The government argues that Holtec's cost report is attorney argument and not admissible evidence. ECF No. 50 at 43-44. Holtec responds that because it reported, and the government audited, each financial transaction in the report, and included supporting documents to back up the transactions, the cost report is not analogous to the computations of damages found in initial disclosures in other types of cases. ECF No. 58 at 28-29.

This court has long accepted the audit process in spent-nuclear-fuel cases as a means of "eliminating issues concerning whether a cost was really incurred and for what purpose." *Yankee Atomic Electric Co. v. United States*, 73 Fed. Cl. 249, 268 (2006), *rev'd in part on other grounds*, 536 F.3d 1268 (2008); *see also Arizona Public Service*, 93 Fed. Cl. at 395 (The plaintiff "made an extensive disclosure of charges as support for its claims as part of a damages audit." (quotation marks omitted)); *Georgia Power*, 2015 WL 832425 at *3 (The court ordered parties to "cooperate in an audit process" to "avoid the presentation of unnecessarily voluminous accounting data at the time of trial.").

Following the audit, the government, through its own expert, contested only $354,269 of the Palisades security costs. ECF No. 40-1 at A158-60 (Mr. Gmyr stating that he believed he had identified the costs that needed to be adjusted and that other costs were "accurately recorded and accurately reported"). The government also twice stated in its response to Holtec's discovery

requests that it "does not plan to present arguments to contest that plaintiff recorded and documented" the Palisades costs claimed in Holtec's motion for summary judgment. ECF No. 40-1 at A55-57. When questioned about that statement in a hearing, the government stated to the court that the costs were actually incurred. ECF No. 55 at 16:11-18:16 (hearing transcript) (The government "admit[s] that the costs were recorded and they were recorded in association with a work order …. [T]hese costs were incurred factually."). The government's audit of Holtec's records and documents was its opportunity to dispute the contents of the cost report and to dispute whether any particular transaction was caused by the government's breach of the Standard Contract. Other than the specific disputes discussed below, it did not contest Holtec's records.

In *Arizona Public Service*, this court addressed a similar situation. The government had said that it did "not dispute that the charges included in the claim have been properly recorded and/or accounted for within the plaintiff's ledger systems." 93 Fed. Cl. at 390 n.13 (cleaned up). The court thus "treated the numbers as stipulated" because even though the "[p]laintiff did not provide invoices, [the government] did not express concern." *Id.* Here, the government had the opportunity during discovery and its audit to express any concerns about "where [the] number[s] come from." ECF No. 67 at 31:25-34:6 (oral argument transcript, government's attorney arguing that it did not have that opportunity despite having finished discovery). But the government did not pursue that information during discovery. ECF No. 67 at 36:11-36:25.

A party cannot create a genuine dispute of material fact just by saying there is a disagreement; there must be a particular disagreement. "By its very terms, [the summary judgment] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48 (emphasis omitted).

Here, not only is there no particular disagreement between the parties, but the government's own also expert agreed with Holtec's total costs other than the excluded amounts.

### 1. The government cannot create an issue of material fact by disputing its own expert witness's conclusions.

Holtec seeks partial summary judgment for $2,464,297 in Palisades security costs, after taking out the $354,269 contested by the government. ECF No. 58 at 14; *see also* ECF No. 40-1 at A18 (stating that Holtec's "claim for estimated security costs should be reduced by $354,269"). The government's expert, Mr. Gmyr, stated that he had identified all amount adjustments necessary. ECF No. 40-1 at A158-60.

The government now argues that Mr. Gmyr raised a genuine issue of material fact regarding the equation used to allocate costs. ECF No. 50 at 28. But Mr. Gmyr ultimately stated the total amount he contested—$354,269 in security costs—and he reached his conclusion based on his own equation and based on documentation that Holtec provided. ECF No. 40-1 at A15-16, A18; ECF No. 58-1 at SA32-33 (Mr. Gmyr explaining in a deposition how he accounted for different posts at Palisades in his calculation).[6]

"A party cannot create an issue of fact by … contradicting [its own witness's] prior deposition testimony, without explaining the contradiction or attempting to resolve the disparity." *Abbey v. United States*, 99 Fed. Cl. 430, 457 (2011) (quotation marks omitted). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment

---

[6] Holtec now agrees that it is not entitled to some of that money and will only seek about $150,000 of the $354,269 in dispute. ECF No. 67 at 18:23-19:4 (Holtec's counsel stating that "our own expert pointed out an error in our methodology. So we're really about $150,000 apart on what that cost of the two posts was during this time period.").

as a procedure for screening out sham issues of fact." *Perma Research & Development Co. v. Singer Co*., 410 F.2d 572, 578 (2nd Cir. 1969).

In the second-round case covering Palisades and Big Rock, there was a similar dispute regarding security costs, where the government disputed a specific portion of the claimed costs. *Entergy*, 128 Fed. Cl. at 123. This court granted Holtec's predecessor, Entergy, partial summary judgment on the uncontested portion of its claimed security costs. *Id*. The government cites several cases where this court and others have denied summary judgment because of genuine disputes of material fact related to allocation. ECF No. 50 at 29. But here, the parties have already engaged in a thorough and detailed auditing process, narrowed the issues, and pointed out any disputes. Notably, this court has used the same auditing process repeatedly in other spent-nuclear-fuel cases. *Yankee Atomic Electric*, 73 Fed. Cl. at 268; *Southern Nuclear Operating Co. v. United States*, 77 Fed. Cl. 396, 441-42 (2007), *vacated in part on other grounds*, 637 F.3d 1297 (Fed. Cir. 2011); *Arizona Public Service*, 93 Fed. Cl. at 395; *Yankee Atomic Electric Co. v. United States*, 113 Fed. Cl. 323, 327 (2013); *Alabama Power Co. v. United States*, 119 Fed. Cl. 615, 625 (2014). The government here identified only $354,269 in dispute, which Holtec excluded from its motion. ECF No. 40 at 20. There is no genuine issue of material fact about the rest.

## 2. Holtec must prove only its total claimed security costs, not causation or that the costs were reasonably foreseeable

The government argues that even though it agreed to pay security costs in prior litigation, Holtec must still prove foreseeability, causation, and reasonable certainty for all of the damages it claims. ECF No. 50 at 16, 29 n.11. That argument ignores this court's decisions in the prior rounds of litigation, which were all in some senses the same case as this one. This suit is aimed at enforcing this court's earlier holdings that the government breached the Standard Contract with Holtec's predecessors and is liable to Holtec and its predecessors for that breach. *See generally Consumers*,

65 Fed. Cl. 364; *Entergy*, 128 Fed. Cl. 120. Holtec has periodically sued—to avoid any time bars (ECF No. 67 at 26:5-12)—seeking updated damages for the same ongoing breach. *See* ECF No. 1 at 9-11[¶¶25-28]. It would be remarkably inefficient and would subvert the finality of this court's earlier decisions to require Holtec to again prove the same facts that underlay those earlier suits. Or, viewed the other way, if the court were to require Holtec to again prove those same facts, and the court concluded that Holtec had not proven them, it would be odd that the court in two different cases came to the opposite conclusion on the same set of events involving the same parties or their successors in interest.

"Under the judicially-developed doctrine of collateral estoppel [or issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v, Mendoza*, 464 U.S. 154, 158 (1984). Issue preclusion "protects the finality of judgments by precluding relitigation in a second suit of claims actually litigated and determined in the first suit." *Laguna Hermosa Corp. v. United States*, 671 F.3d 1284, 1287 (Fed. Cir. 2012) (citations omitted). The government is precluded from relitigating the issues of foreseeability and causation vis-a-vis the Palisades security costs if "(1) the issue[s are] identical to one[s] decided in the first action; (2) the issue[s were] actually litigated in the first action; (3) resolution of the issue[s] was essential to a final judgment in the first action; and (4) the [government] had a full and fair opportunity to litigate the issue[s] in the first action." *Laguna*, 671 F.3d at 1288.

This case meets all four prongs. In the second-round litigation, this court addressed the same issue regarding whether costs incurred for staffing two security posts for Palisades ISFSI 2 were foreseeable and directly caused by the government's breach of the contract. *See Entergy*, 128 Fed. Cl at 133-35. In that case, closely related parties, Holtec's predecessor in interest and the

government, actually litigated the issue at trial, and the resolution was central to the final judgment of the case. *Id.* "The government agree[d] that the second [Palisades] ISFSI was constructed to store [spent nuclear fuel] at Palisades as a result of the government's breach" but argued that "Entergy failed to prove that the security posts were actually staffed … consistently" and that "Entergy's trial evidence did not establish that the commitment of two new security posts resulted in an increase in total security costs to the extent claimed by Entergy." *Id.* at 133-34. This court found "sufficient proof" that Entergy "staff[s] the two posts at the second ISFSI 24 hours a day, 365 days a year." *Id.* at 134.

This court also held "that Entergy has sufficiently proved its labor costs, … that the evidence establishes that Entergy used its resources to staff two security posts at the [second Palisades] ISFSI all day every day[,] and that Entergy would not have needed to secure the ISFSI but for the government's breach." *Entergy*, 128 Fed. Cl at 134. This court further held that "Entergy has fulfilled its obligation to show with reasonable certainty that the awarded costs were actually caused by the breach." *Id.* at 135 (quotation marks omitted). The government in that case cross-examined several of Entergy's employees, including Peter Sabo, whose testimony the court cited in support of its decision in favor of Entergy. *Id.* at 133-34.

The government does not argue that it makes a difference that Holtec is not precisely the same party that litigated the earlier rounds but is instead a successor in interest. And that does not change the issue-preclusion analysis, particularly because Holtec is litigating this case for Entergy, its predecessor. Regardless, a party in privity with the party in an earlier litigation has long been allowed to assert res judicata. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 320-26 (1971) (overturning *Triplett v. Lowell*, 297 U.S. 638 (1936), and relaxing the historically rigid mutuality doctrine, which already allowed privies to assert

estoppel). Thus, Holtec has met the requirements to show that the government is precluded from reraising whether the two security posts were foreseeable and directly caused by the government's breach.

Alternatively, this court's earlier judgments against the government in the earlier rounds of this litigation could be considered law of the case. One purpose of the law-of-the-case doctrine is "to prevent the relitigation of issues that have been decided." *Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed. Cir. 1995) (citations omitted). "The doctrine operates to protect the settled expectations of the parties and promote orderly development of the case." *Suel v. Secretary of Health and Human Services*, 192 F.3d 981, 984 (Fed. Cir. 1999). Under the law-of-the-case doctrine, "a court will generally refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Id.* at 985. While here the earlier rounds were different suits with different case numbers, they are effectively extensions of the same case. A decision construing an earlier judgment of the same issues is at times considered law of the case in later proceedings to enforce the same judgment. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 271 F.3d 235, 238 (6th Cir. 2001) ("[T]he continuing enforcement of a consent judgment is rightfully considered an extension of the original lawsuit … [and] should be honored as the law of the case."). That is essentially what Holtec is doing here: seeking to enforce the earlier judgment through further damages for the same breach by the government.

The government relies on *Portland General Electric Co. v. United States*, 107 Fed. Cl. 633 (2012), to argue that even if a plaintiff's costs "have been accepted repeatedly in prior [spent nuclear fuel] litigation," the plaintiff must still prove foreseeability, causation, and reasonable certainty for each claimed cost. ECF No. 50 at 16 (quoting *Portland General Electric*, 107 Fed. Cl. at 653). But even in that case, the court relied on earlier determinations of foreseeability, causation,

and reasonable certainty to address the new proposed costs. *See Portland General Electric*, 107 Fed. Cl. at 654 (relying on earlier cases that refused to reduce loading costs that were deferred rather than avoided). Plus, in that case the government specifically disputed the plaintiff's allegations about foreseeability, causation, and reasonable certainty. *Id.* at 654-59. Here the government has pointed to nothing that would distinguish the foreseeability, causation, or reasonable certainty of Holtec's claimed costs from the earlier rounds of litigation over Palisades and Big Rock.

Under either way of viewing this case—either as a new case or as an extension of the earlier rounds of litigation—the government cannot relitigate causation and foreseeability of the Palisades security costs.

**B.    Holtec is entitled to Big Rock damages**

**1.    Holtec has not already been paid for its Big Rock damages**

In its 2007 purchase of Palisades and Big Rock, Holtec's predecessor, Entergy, inherited the rights and obligations of the Standard Contract. ECF No. 50-1 at Appx85 (asset sale agreement, section 6.14(a)). The Standard Contract states, "The rights and duties of the Purchaser [here, Entergy] may be assignable with transfer of title to the [spent nuclear fuel] and/or [high-level radioactive waste] involved." *Consumers Energy Co. v. United States*, No. 02-1894, ECF No. 59-1 at 26 (Fed. Cl. Oct. 18, 2004) (original Standard Contract); *see also* 10 C.F.R. § 961.11, Art. XIV (generic Standard Contract). Thus, no one disputes that Holtec inherited the rights and obligations of the Standard Contract from Entergy, which inherited those rights and obligations from Consumers. *See* ECF No. 67 at 14:10-19 (Holtec's counsel stating that "the assignment of the Standard Contract … [is] not in dispute here.… No party is contending that there was an improper assignment.").

Entergy received a $30 million lump-sum payment so that Consumers, as the seller, would "have no further responsibility or liability whatsoever in respect of the Big Rock ISFSI." ECF No. 50-1 at Appx94 (asset sale agreement, section 6.25).

That $30 million amount was designed to address the expenses that would arise, over time, out of Big Rock. ECF No. 50-1 at Appx157 (David Gibbs's deposition). Holtec asserts that it has incurred a total of $34,281,478 in relevant Big Rock expenses since 2007 and seeks $4,281,478 in damages associated with Big Rock, which is the resulting amount after subtracting the $30 million. Holtec states that "Consumers Energy Company owns the claim for post April 11, 2007 damages resulting from the Government's delay … up to the first $30 million of recoverable damages, and [Holtec] makes no claim for this amount." ECF No. 40 at 18; *see id.* at 9.

While Consumers gave Holtec $30 million, the government refers to the Big Rock amount as a "$90 million benefit." ECF No. 50 at 17. It bases that number on the testimony of Holtec's corporate representative, David Gibbs, who explained Holtec's calculations about the time value of money during the acquisition negotiations and determined that the $30 million in 2007 would be worth about $90 million in the future. ECF No. 50 at 19; ECF No. 50-1 at Appx156-57. The government therefore argues that it owes no money to Holtec because Holtec already received a benefit worth more than the total expenses it has paid for Big Rock. The government adds that paying Holtec for those expenses would amount to a windfall for Holtec, which would be paid twice for the $4,281,478 in damages it seeks associated with Big Rock. ECF No. 50 at 18; ECF No. 62 at 9-10.[7]

---

[7] ECF No. 62, which is Holtec's reply in support of its cross-motion for partial summary judgment, is publicly available in redacted form at ECF No. 65.

Holtec is correct that its damages should be calculated as its total expenses minus the $30 million amount Consumers paid for Big Rock. The government's total liability for damages is the total the private parties have spent due to the government's breach. *Kansas Gas and Electric Co. v. United States*, 685 F.3d 1361, 1366 (Fed. Cir. 2012) ("The injured party is limited to damages based on [its] actual loss caused by the breach" (quoting Restatement (Second) of Contracts § 347 cmt. e)). Here, Holtec, Entergy, and Consumers collectively allege that they have spent $34,281,478 since 2007. Consumers paid $30 million of that total, and it separately sought and received payment from the government for that $30 million through a settlement agreement. ECF No. 67 at 11:7-12:13 (Holtec's counsel); *id.* at 53:10-54:12 (government's counsel). Holtec and Entergy are now seeking payment for the rest, $4,281,478. *See* ECF No. 40 at 18; ECF No. 58-1 at SA6-7 (asset sale agreement). It is immaterial whether Holtec and Entergy actually received a bigger benefit from Consumers than the $30 million that changed hands.

The government is not entitled to the benefit of the time value of money here. While Mr. Gibbs may have provided insight on Holtec's financial considerations in acquiring Big Rock, Holtec's financial considerations do not affect the total damages. Damages for a breach of contract are calculated based on the actual costs for a party to address the breach. *Kansas Gas and Electric*, 685 F.3d at 1366. Here, the total damages that Holtec calculated for Big Rock are $34,281,478. That total damage does not change because of Holtec's separate financial transactions.

Further, the government acknowledged in earlier rounds of this litigation that the Big Rock amount was $30 million. *See Entergy Nuclear Palisades, LLC v. United States*, No. 12-641, ECF No. 60 at 3 (Fed. Cl. Mar. 23, 2015) (identifying the "amount identified in the [asset sale agreement] as the 'Big Rock Amount' ($30 million)"). The government's argument now, that the amount changes with time, is at least $90 million, and may be more (ECF No. 67 at 52:14-53:5),

represents a change in the government's position that would make it nearly impossible to assess the damages the government owes at any given time, as the value of an earlier receipt of money goes up and Holtec spends some of that money on its own expenses.

The government argues that Holtec's receiving a sum of money from Consumers that was worth $30 million then but is worth more now amounts to a mitigation of damages; the government's breach cost Holtec less than the current value of that sum; and damages should be lowered to zero. ECF No. 50 at 20-23. The government compares this case to *LaSalle Talman Bank, F.S.B. v. United States*, 317 F.3d 1363 (Fed. Cir. 2003). There, the Federal Circuit held that, when a plaintiff mitigates its damages, it is not entitled to recover for damages that were never incurred. *Id.* at 1373. But here, neither Holtec nor Entergy nor Consumers reduced the total damages that were incurred. They spread the harm amongst themselves, but the total damages remained the same. As Holtec and Consumers stated during the sale of Big Rock,

> Seller [Consumers] also agrees that any diminished value claim relating to the period from and after the Closing that it brings against the Department of Energy with respect to the Big Rock ISFSI shall be limited to a claim for Thirty Million Dollars ($30,000,000), plus interest from and after the closing. … At Closing, [Consumers] shall pay to Buyer [Entergy] an amount equal to Thirty Million Dollars ($30,000,000) (the "Big Rock Amount"). [Entergy] expressly acknowledges and agrees that, from and after the Closing [Consumers] shall have no further responsibility or Liability whatsoever in respect of the Big Rock ISFSI.

*See* ECF No. 58-1 at SA6-7 (asset sale agreement).

Entergy's purchase of Big Rock and the resulting Big Rock amount was not a mitigation activity, but rather a negotiated term in a commercial transaction in which the government was not a party. Mitigation is when the total expense of a breach is changed by, for example, the non-breaching party's "attempting to rectify the injury the breach caused it." *Citizens Federal Bank v. United States*, 474 F.3d 1314, 1320 (Fed. Cir. 2007) (citing Restatement (Second) of Contracts § 347 cmt. c (1981)). As this court has explained, "[w]hatever prices [a company] charges … are

17

legally irrelevant to the recovery of the mitigation damages." *Duke Energy Progress, Inc. v. United States*, 135 Fed. Cl. 279, 297 (2017).

This case is more analogous to *Connecticut Yankee Atomic Power Co. v. United States*, 169 Fed. Cl. 531 (2024). In *Connecticut Yankee*, the plaintiffs, the Yankees, established and maintained nuclear decommissioning trusts, before the government's breach, to pay for storing spent nuclear fuel. *Id.* at 532. Those trusts were invested and maintained post-breach, and they gained value. *Id.* at 533-34. The Yankees asked this court "to find that the investment performance of their [trusts] is irrelevant to the computation of damages resulting from the government's breach of contract, and any net gains from the [trusts] do not serve to offset the Yankees' claimed costs." *Id.* (cleaned up).

This court agreed, holding that the trusts did not represent "a mitigation activity, and the [trusts'] investment earnings are a remote consequence of the breach." *Connecticut Yankee*, 169 Fed. Cl. at 534. The court explained that "there is no direct relation between the government's breach of the Standard Contract and" the trusts. *Id.* at 535. Further, the trusts' "investment performance is dependent on a variety of external factors that affect financial markets," not the government's breach. *Id.* at 536; s*ee also Dominion Resources, Inc. v. United States*, 641 F.3d 1359, 1364-65 (Fed. Cir. 2011) (holding that any financial benefit to Dominion resulting from an "intervening investment risk" was "too far removed from the breach," so the "government [could] not ask for a reduction in damages"). "Just as the Yankees may not ask for increased damages should their [trust] investments yield losses, the government may not ask for reduced damages due to gains in the Yankees'" trusts. *Connecticut Yankee*, 169 Fed. Cl. at 536. Here, Entergy and Consumers negotiated the $30 million Big Rock amount as part of a separate commercial transaction; they redistributed a portion of the eventual damages among themselves. Consumers has sought

and received payment from the government for its $30 million claim. ECF No. 67 at 11:7-12:13. Now that Holtec has spent more than $30 million for Big Rock, it is entitled to seek its damages from the government.

> **2.    The Big Rock costs are well documented and reasonably foreseeable, and the government raises no genuine issue of material fact about the total**

As discussed above, plaintiffs in spent nuclear fuel cases produce voluminous and detailed records to the government as part of a damages audit. *Arizona Public Service Co.*, 93 Fed Cl. at 395; *Georgia Power Co.*, 2015 WL 832425 at *3. Here, Holtec provided those records, and the government audited them. *Supra* § II.A. The government deposed Timothy Horan, a former site manager of Big Rock, who explained how the Big Rock costs were identified and stated that the costs in the cost report were "an accurate reflection of the costs incurred each year in connection with the Big Rock Point site." ECF No. 40-1 at A168-69. The government also repeatedly stated in response to Holtec's discovery requests that it "does not plan to present arguments to contest that [Holtec] recorded and documented" the Big Rock costs included in Holtec's motion for summary judgment. ECF No. 40-1 at A58-62.

The government does not dispute most of the enumerated costs that Holtec seeks for Big Rock. ECF No. 50 at 17-23. After its audit, the government disputed only $23,415 for a study, which is discussed below. *Id.* at 23-26; ECF No. 40-1 at A18 (Mr. Gmyr's report in which he "quantified a claim adjustment for costs recorded for the Enercon feasibility study totaling $23,415"). Holtec does not seek to recover that $23,415 on summary judgment. Thus, for the same reasons discussed above (§ II.A), Holtec is entitled to summary judgment for $4,258,063 in damages for Big Rock.

###### 3. Holtec disclosed Eileen Supko, and the court can consider her expert reports on summary judgment

In its motion, Holtec relies on several expert reports authored by Eileen Supko from earlier rounds of litigation to establish that the Big Rock ISFSI would not have existed but for the government's breach. ECF No. 40 at 3, 10, 15-16. The government argues that Holtec did not disclose Ms. Supko as required by RCFC 26(a)(2)(A)-(B) and that the court should therefore strike her declaration and all of her expert reports from Holtec's motion for summary judgment. ECF No. 50 at 34-41.

The government is wrong for multiple reasons. The government knew that Holtec intended to use Ms. Supko as its expert witness from the beginning, her expert reports are admissible, and, regardless, the government concedes the point for which Ms. Supko's expert testimony was needed.

At the start of this litigation, Holtec both disclosed Ms. Supko's identity as required by RCFC 26(a)(2)(A) and noted the scope of her testimony. ECF No. 40-1 at A88 (Holtec "intends to rely on, and incorporates by reference, in this current litigation the expert reports of Eileen Supko and Jim Speyer from prior rounds of litigation including litigation pursued by Consumers Energy in support of claims for Palisades and the Big Rock Point ISFSI."). Holtec sent the government Ms. Supko's expert reports from the earlier rounds of litigation, which contained "statement[s] of all opinions [she] will express and the basis and reasons for them," "the facts or data [she] considered … in forming them," and "any exhibits." RCFC 26(a)(2)(B)(i)-(iii); *see* ECF No. 40-1 at A33-38.

The government told Holtec that it did not believe Ms. Supko was properly disclosed because Holtec had not identified particular parts of the prior expert reports, provided an updated list of qualifications and prior cases, or disclosed her compensation, all required under rule

26(a)(2)(B)(iv)-(vi). ECF No. 50-1 at Appx238. Holtec responded, providing Ms. Supko's updated CV, a list of all publications she had authored in the past ten years, a list of all other cases in which she had testified as an expert in the past four years, her current hourly rates, and two of her reports that best captured her opinions on Big Rock. ECF No. 50-1 at Appx242. After that, the government did not indicate that it was maintaining its objection to Ms. Supko as an expert and scheduled Ms. Supko's deposition. ECF No. 58-1 at SA102-04. The government then cancelled the deposition six days before it was scheduled to take place. *Id.* But the government was well aware of Ms. Supko's proposed expert testimony.

The government argues that expert reports submitted in prior rounds of litigation are inadmissible hearsay. The government generally ignores that this case does not occur in a vacuum but is the fourth in a series of cases with the same factual background. *See supra* § II.A.2. Because of the government's long-ago breach of the Standard Contract, plaintiffs like Holtec have to file repeated lawsuits to recover periodic damages as they are incurred. *Indiana Michigan Power*, 422 F.3d at 1376 (A plaintiff may recover "damages for nonperformance only to the time of trial and may not recover damages for anticipated future nonperformance." (emphasis omitted)). Successive rounds of spent-nuclear-fuel litigation therefore have substantial overlap with earlier rounds.

The government likens the use of prior expert reports here to that in *Bemesderfer v. United Parcel Service, Inc.*, No: 6:22-cv-270, 2023 WL 7151215 (M.D. Fla. Oct. 31, 2023), an employment discrimination case. ECF No. 50 at 39-40. In *Bemesderfer*, the plaintiff alleged discrimination on the basis of a protected disability, and the defendant presented an expert report that was prepared for another case, involving a different plaintiff and a different disability. *Bemesderfer*, 2023 WL 7151215 at *2-4. As the court in *Bemesderfer* pointed out, the expert report was "generated for a different case which fails to relate the expert's opinions to" this plaintiff. *Id.* at *3. Ms.

Supko's report, on the other hand, was prepared for the predecessor in interest of the same plaintiff, the same defendant, and the same issues.

The government had the opportunity to depose Ms. Supko in this round of litigation (ECF No. 58-1 at SA102-04), and the government can choose to cross-examine her if there is a trial. *Cf. Glowczenksi v. Taser International*, 928 F. Supp. 2d 564, 572 (E.D.N.Y. 2013), *aff'd in part, dismissed in part on other grounds,* 594 F. App'x 723 (2nd Cir. 2014) (rejecting affidavits and expert reports from a separate litigation because the witnesses were not disclosed, the reports were unsworn, and the party made no attempt to rehabilitate them). The government also had the opportunity to depose and cross-examine Ms. Supko in previous rounds of litigation. *See Entergy Nuclear Palisades*, No. 12-641, ECF No. 94-1 (Fed. Cl. Oct. 16, 2015) (Ms. Supko's affidavit); *id.* at ECF No. 123 at 47:2-7 (Nov. 20, 2015) (pretrial conference transcript). It would be odd if Ms. Supko's opinions had changed on those same issues.

Other courts have held, in the context of claim preclusion, that "where the witnesses or proof needed in the second action overlap substantially with those used in the first action, the second action should ordinarily be precluded." *Massachusetts School of Law v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998) (quoting *Porn v. National Grange Mutual Insurance Co.*, 93 F.3d 31, 36 (1st Cir. 1996)); Restatement (Second) of Judgments § 24 cmt. b (1982) ("If there is a substantial overlap, the second action should ordinarily be held precluded."). Similar logic applies here. Ms. Supko was accepted as a witness in the earlier rounds of litigation. Her opinion on Big Rock was considered, examined, and accepted by the court. The government's objection to that opinion is too late.

Because Holtec properly disclosed Ms. Supko as an expert witness, she can be called to testify, and the court can consider the opinions in her expert reports on summary judgment. *See, e.g.*, *Branch Banking & Trust Co. v. Camco Mgmt, LLC*, 704 F. App'x. 826, 830 (11th Cir. 2017).

Regardless, the government concedes the point that Holtec intended to establish from Ms. Supko's reports: that "the Big Rock ISFSI only exists as a direct consequence of the breach of the Standard Contract." ECF No. 50 at 8; ECF No. 67 at 74:6-7, 89:16-21. And the government's expert, Jonathan Neuberger, voiced the same opinion in the first round of litigation. ECF No. 40-1 at A44 (Neuberger report). Nothing about Ms. Supko's expert reports undermines Holtec's position on summary judgment.

### 4.  There is a genuine issue of material fact regarding whether the Enercon study was a foreseeable and reasonable consequence of the government's breach

Holtec alleges that it paid $23,415 to study the feasibility of moving spent nuclear fuel from Big Rock to Palisades (the "Enercon" study). ECF No. 58 at 10. As noted above, Holtec does not seek summary judgment on that amount because, after the government's audit, the government disputed that Holtec could recover it. ECF No. 40 at 20; ECF No. 40-1 at A18. The government seeks summary judgment that Holtec is not entitled to the Enercon study costs, arguing that the study was neither a foreseeable nor a reasonable consequence of the government's breach of the contract. The government argues that Michigan state law, Mich. Comp. Laws § 325.491(2)(b), prohibits the movement of spent nuclear fuel, so it was unreasonable for Holtec to commission a study into taking an unlawful action. ECF No. 50 at 23. Holtec responds that the Michigan law was preempted by federal law and therefore unenforceable, so moving the fuel would not have been unlawful. ECF No. 58 at 11-12.

The government is not entitled to summary judgment on the costs of the Enercon study. Both parties rely on *Vermont Yankee Nuclear Power Corp. v. Entergy Nuclear Vermont Yankee,*

*LLC*, 683 F.3d 1330 (Fed. Cir. 2012), where the Federal Circuit held that costs paid to comply with improper state requirements, which were preempted by federal law, were not foreseeable costs. ECF No. 50 at 23; ECF No. 58 at 11-12. The government argues that no one could have foreseen that Holtec would have to pay to comply with an improper state law. Holtec argues that, because the Michigan law was preempted by federal law under *Vermont Yankee*, 683 F.3d at 1347, it was always possible—at the time of the contract as well as the after the Michigan law was passed—to move spent nuclear fuel, and it was therefore foreseeable that Holtec might want to move the fuel.  ECF No. 58 at 11. Holtec has the better reading of *Vermont Yankee*. If the Michigan law was preempted by federal law, it was foreseeable that Holtec might want to move the fuel. And the study did not involve Holtec paying to comply with an improper state law; it involved Holtec paying to consider moving fuel, or avoid complying with what it views as an improper state law. Holtec has presented a genuine dispute of material fact regarding whether the Michigan law is enforceable against Holtec and whether, at the time Holtec's predecessor entered into the Standard Contract with the government, it was foreseeable that Holtec might want to move its spent nuclear fuel from one site to another. The government is therefore not entitled to summary judgment on the costs of the Enercon study.

Holtec also argues that it is possible that the Michigan law never applied to Big Rock because it applies only to a "nuclear power generating facility" (Mich. Comp. Laws § 325.491(2)(b)), and, at the time of the study, Big Rock was not a "nuclear power generating facility" because Consumers decommissioned the reactor. ECF No. 58 at 11 n.4. The court need not address that issue because the government is not entitled to summary judgment under Holtec's first preemption theory.

## III.    Conclusion

For the reasons stated above, this court **grants** Holtec's motion for partial summary judgment with respect to $6,888,637 in damages and **denies** the government's cross-motion for partial summary judgment.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge